14842

HASELDEN v. STANDARD MUTUAL LIFE ASS'N

(1 S. E. (2d), 924)

*Messrs. Edwin H. Cooper* and *W. C. Moore,* for appellant,

*Mr. Joe P. Lane,* for respondent,

March 14, 1939.

The opinion of the Court was delivered by MR. JUSTICE FISHBURNE.

The respondent, as beneficiary under an insurance policy on the life of her husband, L. E. Haselden, brought this action against the appellant for the recovery of $1,000.00, the amount of the insurance. The policy was issued by the appellant on November 12, 1934, and on May 15, 1936, lapsed for the non-payment of the premium. The insured died in March, 1937, at the age of 64 years. Upon trial a verdict was returned in favor of the respondent in the sum of $800.00.

On this appeal the appellant assigns error to the lower Court in its instructions to the jury; error in excluding certain evidence; and error in refusing to direct a verdict.

The decision of the case largely depends upon the proper construction of the following provision contained in the policy with reference to its reinstatement after lapse: "Section 5 (b). The policy holder may apply for reinstatement upon lapsation of this policy for any reason by furnishing the Association evidence of good health satisfactory to the association and upon payment of the sum of Four ($4.00) Dollars, which said application for reinstatement may be refused for any reason the Association deems sufficient."

It is the contention of the appellant that the foregoing provision vests the right in the company to reject the application for reinstatement "for any reason the Association deems sufficient."

Reinstatement provisions commonly found in insurance policies carry the definite agreement on the part of the insurer to revive the contract upon the payment of the past due premium and interest, together with satisfactory evidence of good health, furnished within a stipulated time. The reinstatement provision contained in the policy under consideration is expressed somewhat differently. It fixes no definite time, declares that the holder "may apply for reinstatement," and contains the added clause that the "application may be refused for any reason the Association deems sufficient." In view of these distinguishing features, the appellant takes the position, as we understand the argument,

that the language is not susceptible of being interpreted as an agreement on the part of the insurer to reinstate; that there is to be found therein merely a suggestion to the insured that he may apply for reinstatement, with no obligation on the part of the company to revive, even though the insured furnishes satisfactory evidence of good health, and with no duty to assign any reason for rejection.

A brief statement of the underlying facts will clarify the issue.

On July 17, 1936, the insured mailed to the Association an express money order for $6, for the purpose of having the policy reinstated, but apparently failed to enclose an application for reinstatement and a certificate of good health. Nearly one month later, on August 11th, the Association returned this money order to the insured, and merely advised him that "your policy with our company is lapsed." Upon receipt of this letter the insured, on August 12, 1936, returned the money order to the Association, together with a reinstatement blank, and advised the Association that he had seen Mr. Evans, an agent of the Association, on July 17, 1936, and had at that time signed a blank, with the understanding that Mr. Evans would look after the reinstatement of the policy. On August 13th the insurer wrote the insured: "We enclose herewith money order and wish to call your attention to Paragraph 5 under your policy which makes it optional with the company as to whether or not they will accept reinstatements. It is necessary for us to decline your reinstatement."

The reinstatement application signed by the insured also included a certificate by him to the effect that he was in good health on August 12th.

It will be observed that the Association neither requested nor required from the insured any proof of good health other than that which was contained in the certificate of health forwarded to it on August 12th. No medical examination was given nor demanded.

The Circuit Judge instructed the jury: "I charge you further that while this contract provides the following language: 'which said application for reinstatement may be refused for any reason the association deems sufficient,' nevertheless, when construed with the other language, under the law, the defendant would have to have and give some reason concerning the health of Haselden, it just could not have or give no reason concerning the health of Haselden."

Appellant asserts that this charge was erroneous, (a) Because under the terms of the policy the appellant had the right to decline to reinstate, and, (b) it prevented the jury from giving consideration to any reasons for rejection of the application to reinstate, except those relating to the health of the insured, whereas the Association had the right to consider circumstances and factors other than the condition of the health of the insured.

In our opinion the Circuit Judge correctly construed the reinstatement provision of the policy.

It is a cardinal principle of insurance law in this State, requiring no citation of authority, that a policy or contract of insurance is to be considered liberally in favor of the insured; and strictly as against the company. Stated more fully, the rule is, that where by reason of ambiguity in the language employed in a contract of insurance, there is doubt or uncertainty as to its meaning, and it is fairly susceptible of two interpretations, one favorable to the insured and the other favorable to the company, the former will be adopted.

We held in *Prosser et al. v. Carolina Mut. Ben. Corp.*, 179 S. C., 138, 183 S. E., 710, that where the language of an insurance contract may be understood in more senses than one, or where it is doubtful whether given words were used in an enlarged or restricted sense, other things being equal, that construction should be adopted which is most beneficial to the insured.

In our opinion, the clause relied upon by the Association as giving it the right to reject the application for any reason deemed by it sufficient, relates to the health of the applicant. Certainly the Association could not reject the application upon its mere whim or fancy. Under a fair construction of the reinstatement provision, it was not justified in arbitrarily rejecting the reinstatement application of the insured for reasons disassociated with the applicant's physical and mental health. The provision for reinstatement gave rise to a substantial right on the part of the insured to have his contract revived or reinstated upon compliance by him with all of the conditions required by the policy, and it was incumbent upon the Association in passing upon the application and the certificate of good health, to consider them in the light of common sense and fair dealing, and not arbitrarily. *Lane v. New York Life Ins. Co.,* 147 S. C., 333, 145 S. E., 196; 37 C. J., 498.

The first position taken by the appellant is that the Association may arbitrarily refuse to reinstate the policy for any reason it deems proper and thereby in effect nullify the reinstatement provision. This position is untenable, because as we have said, a simple statement of dissatisfaction, without some good reason assigned, might be a mere pretext, and cannot be regarded. Such arbitrary conduct as was adopted by the Association in this case is so out of harmony with the theory and spirit of life insurance contracts, and so contradictory to the attitude unformly assumed by insurance companies in soliciting patronage, as to be manifestly outside of anything contemplated by both parties to the policy in question.

While on the trial, the appellant took the position that under the terms of the policy the question of reinstatement was entirely optional and a matter of grace on its part, and that the insured had no right under any circumstances to demand reinstatement, at the same time it offered proof that its refusal to reinstate was made only after it had re-

ceived secret and confidential information relating to the insured.

An insurer has no right arbitrarily to reject the application or to act upon any information secretly obtained, without giving the insured an opportunity to meet it; and if the insurer acts arbitrarily and unreasonably upon secret information, it is liable on the policy. 6 Couch on Insurance, Sec. 1375, Page 4940; *Leonard v. Prudential Ins. Co.*, 128 Wis., 348, 107 N. W., 646, 116 Am. St. Rep., 50. Such a course is contrary to the letter and spirit of the insurance contract. The Association was entitled to be satisfied of the insurability of the applicant before reviving the policy, but it had no right, by proceeding outside of anything contemplated by the contract to create the dissatisfaction. If dissatisfied, it should have notified the insured to furnish further evidence. The contract right to a reinstatement of the policy upon condition, by necessary implication carried with it the right to have the proceedings for compliance with such conditions treated according to common principles of fairness.

Error is assigned because the Court refused to allow the appellant to prove the contents of private reports received by the Association relating to the insured following secret investigations made by it, and as the result of which reports it claimed upon trial the reinstatement was refused. The appellant's witness, W. W. Arthur, was permitted to testify that the Association received such reports from an investigating agency, as the result of which the insured's application for reinstatement was rejected. He was then questioned as to the contents of those private reports. Upon objection, such testimony was excluded. It is obvious that the testimony offered violated the rule against hearsay testimony, and, as such, was inadmissible. Statements made out of Court, without an opportunity for cross-examination, and not under the sanction of an oath, should not be received as evidence. It is the practice of the courts to exclude hearsay evidence unless the proffered statements

are within certain definite and well recognized exceptions to the rule. No such exceptions are present in this case.

Judgment affirmed.

MR. CHIEF JUSTICE STABLER and MESSRS. JUSTICES BONHAM and BAKER concur.

MR. JUSTICE CARTER did not participate on account of illness.