**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

The State, Respondent,

v.

Preston Mozeak, Appellant.

Appellate Case No. 2015-002530

---

Appeal From Marion County
William H. Seals, Jr., Circuit Court Judge

---

Unpublished Opinion No. 2018-UP-209
Heard March 13, 2018 – Filed May 9, 2018

---

**AFFIRMED**

---

Appellate Defender Laura Ruth Baer, of Columbia, for Appellant.

Attorney General Alan McCrory Wilson, Senior Assistant Deputy Attorney General John Benjamin Aplin, Assistant Attorney General Joshua Abraham Edwards, all of Columbia; and Solicitor Edgar Lewis Clements, III, of Florence, all for Respondent.

---

**PER CURIAM:** Preston Mozeak appeals his convictions for first- and third-degree criminal sexual conduct (CSC) with a minor, arguing the trial court erred by (1)

instructing the jury it had the duty to "determine the truth" in the case, arrive at a verdict that "speaks the truth," and that verdict means "true saying"; (2) admitting the forensic interview of the minor child (Minor) when it did not possess particularized guarantees of trustworthiness; and (3) finding Minor competent to testify when she practiced her testimony with her mother nightly for a week prior to trial. We affirm.

## I.

Mozeak was indicted for first- and third-degree CSC with a minor after his seven-year-old granddaughter, Minor, disclosed to her mother (Mother) that Mozeak had sexually abused her. During trial, Minor described two instances when Mozeak digitally penetrated her vagina, and another occasion when he told her to touch his penis. The State also presented Mother's testimony and a video recording of Minor's forensic interview. No physical evidence of the abuse was presented. Following trial, the jury found Mozeak guilty as indicted, and the trial court sentenced him to twenty-five years' imprisonment.

## II.

"In criminal cases, an appellate court sits to review only errors of law, and it is bound by the trial court's factual findings unless the findings are clearly erroneous." *State v. Spears*, 403 S.C. 247, 252, 742 S.E.2d 878, 880 (Ct. App. 2013).

## III.

### A.

Mozeak argues the trial court's instructions to the jury that (1) it had a duty to determine the truth in the case, (2) it should arrive at a verdict that speaks the truth, and (3) "verdict" means a "true saying" diluted the State's burden of proof. We disagree.

"The standard for review of an ambiguous jury instruction is whether there is a reasonable likelihood that the jury applied the challenged instruction in a way that violates the Constitution." *State v. Aleksey*, 343 S.C. 20, 27, 538 S.E.2d 248, 251 (2000). "In reviewing jury charges for error, this [c]ourt must consider the . . . charge as a whole in light of the evidence and issues presented at trial." *State v. Simmons*, 384 S.C. 145, 178, 682 S.E.2d 19, 36 (Ct. App. 2009). "Generally, an alleged error in a portion of a charge must be considered in light of the whole charge,

and must be prejudicial to the appellant to warrant a new trial." *State v. Curry*, 406 S.C. 364, 373, 752 S.E.2d 263, 267 (2013) (quoting *Priest v. Scott*, 266 S.C. 321, 324, 223 S.E.2d 36, 38 (1976)). "[I]f as a whole [the instructions] are free from error, any isolated portions [that] may be misleading do not constitute reversible error." *Aleksey*, 343 S.C. at 27, 538 S.E.2d at 251.

Our appellate courts have "strongly urge[d] the trial courts to avoid using any 'seek' language . . . when charging jurors on either reasonable doubt or circumstantial evidence." *State v. Needs*, 333 S.C. 134, 155, 508 S.E.2d 857, 867 (1998), *holding modified on other grounds by State v. Cherry*, 361 S.C. 588, 606 S.E.2d 475 (2004). Such instructions are "disfavored because they '[run] the risk of unconstitutionally shifting the burden of proof to a defendant.'" *Aleksey*, 343 S.C. at 26-27, 538 S.E.2d at 251 (alteration in original) (quoting *Needs*, 333 S.C. at 155, 508 S.E.2d at 867-68)). Our supreme court recently opined, "[T]rial [courts] should refrain from informing the jury . . . that its role is to search for the truth, or to find the true facts, or to render a just verdict." *State v. Beaty*, Op. No. 27693 (S.C. Sup. Ct. refiled Apr. 25, 2018) (Shearouse Adv. Sh. No. 17 at 17) (footnote omitted). The court further instructed trial courts "to avoid these terms *and any others* that may divert the jury from its obligation in a criminal case to determine whether the State has prove[d] the defendant's guilt beyond a reasonable doubt." *Id.* (emphasis added). In *Beaty*, the court found the trial court erred by using the terms "search for the truth," "true facts," and "just verdict," in its opening remarks to the jury. *Id.* at 16-17. However, based on its review of the entire opening comments and the record, the court held the appellant failed to show prejudice sufficient to warrant reversal. *Id.* at 17; *see also Aleksey*, 343 S.C. at 26, 29, 538 S.E.2d at 251-53 (holding "the instruction as a whole properly conveyed the law" and there was no "reasonable likelihood the jury applied the . . . instructions to convict . . . on less than proof beyond a reasonable doubt" when the trial court charged the jury that its "single objective" was "to seek the truth," because the language was not in the circumstantial evidence or reasonable doubt charge, and was "prefaced by a full instruction on reasonable doubt and followed by an additional exhortation to bear in mind the State's heavy burden of proof"); *Needs*, 333 S.C. at 151-52, 154, 508 S.E.2d at 866-67 (finding erroneous the court's circumstantial evidence charge to "seek some other rational or logical explanation other than the guilt of the accused" but holding the error was harmless because the court instructed "twenty-six other times throughout [the] charge that the State ha[d] the burden of proving a defendant guilty beyond a reasonable doubt"); *Aleksey*, 343 S.C. at 28 n.2, 538 S.E.2d at 252 n.2 ("Although settled law disfavors instructing jurors to seek the truth in some contexts because it might be misleading as to the burden of proof, we decline to hold any mention of 'the truth' in jury charges is unconstitutional."); *State v. Pradubsri*, 420

S.C. 629, 638-39, 641, 803 S.E.2d 724, 729-30 (Ct. App. 2017) (finding "no reversible error" after reviewing the entire charge and record when the trial court instructed that "reasonable doubt is doubt which makes an honest, sincere, conscientious juror in search of the truth hesitate to act"), *cert. granted* (Feb. 16, 2018).

Assuming the court's admonition in *Beaty* contemplated the terms the trial court used in this case, and therefore assuming error, we find Mozeak failed to show prejudice sufficient to warrant reversal. *See Beaty*, Op. No. 27693 (Shearouse Adv. Sh. No. 17 at 16-17). The trial court gave the challenged instruction at the close of its jury charge; immediately thereafter, in explaining the verdict form, the court again reminded the jury that the State had the burden of proving guilt beyond a reasonable doubt. Additionally, the trial court properly and repeatedly charged the jury on the State's heavy burden of proof throughout its instructions. Accordingly, we find the challenged instructions did not dilute the State's burden of proof.[1]

## B.

Mozeak argues the trial court erred in admitting the video recording of Minor's forensic interview because the interview lacked particularized guarantees of trustworthiness in that the interviewer, Sally Williamson, asked leading questions, and Minor's statements lacked detail and internal coherence. Specifically, Mozeak argues Williamson asked two leading questions: whether Minor ever called her grandfather "Daddy" and whether the abuse happened when she was "six, five, four, or only when [she] [was] seven." Mozeak also argues the statement lacked detail and internal coherence because Minor could not relay the sequence of the offenses or provide specificity for how long they lasted, and her statement that she "fell asleep" was nonsensical. We disagree.

"The admission of evidence is within the discretion of the trial court and will not be reversed absent an abuse of discretion." *State v. Pagan*, 369 S.C. 201, 208, 631 S.E.2d 262, 265 (2006). "An abuse of discretion occurs when the conclusions of the trial court either lack evidentiary support or are controlled by an error of law." *Id.*

Pursuant to section 17-23-175(A) of the South Carolina Code (2014), a child's

---

[1] There is nothing wrong with reminding jurors the word "verdict" traces its roots to words meaning "true saying." That is, after all, true. But such reminders should be limited to emphasizing that the "true saying" is the jury's finding that the State has or has not met its burden of proving guilt beyond a reasonable doubt.

out-of-court statement is admissible in a criminal trial if:

> (1) the statement was given in response to questioning conducted during an investigative interview of the child;
>
> (2) an audio and visual recording of the statement is preserved on film . . . or other electronic means . . . ;
>
> (3) the child testifies at the proceeding and is subject to cross-examination on the elements of the offense and the making of the out-of-court statement; and
>
> (4) the court finds, in a hearing conducted outside the presence of the jury, that the totality of the circumstances surrounding the making of the statement provides particularized guarantees of trustworthiness.

The statute further provides the trial court "may consider, *but is not limited to*, the following factors" in determining whether a child's statement possesses particularized guarantees of trustworthiness:

> (1) whether the statement was elicited by leading questions;
>
> (2) whether the interviewer has been trained in conducting investigative interviews of children;
>
> (3) whether the statement represents a detailed account of the alleged offense;
>
> (4) whether the statement has internal coherence; and
>
> (5) sworn testimony of any participant which may be determined as necessary by the court.

S.C. Code Ann. § 17-23-175(B) (2014) (emphasis added).

After reviewing the statutory factors, hearing Williamson's in camera testimony, and viewing the video of the forensic interview, the trial court found Minor's statement sufficiently trustworthy. *See* § 17-23-175(A)(4) (providing that a child's out-of-court statement is admissible at trial if "the trial court finds . . . that the totality of the circumstances surrounding the making of the statement provides particularized guarantees of trustworthiness"); § 17-23-175(B) (enumerating five

factors the court may consider). The court found Williamson's questions were open-ended and not leading; Williamson was qualified, trained, and experienced; and Minor's statement was sufficiently detailed, coherent, and logical, considering she was a seven-year-old child.

First, we find evidence supports the trial court's ruling that Williamson's questions were not leading. *See* § 17-23-175(B)(1) (providing that the trial court may consider "whether the statement was elicited by leading questions"). When Williamson asked Minor if she ever called her grandfather "Daddy," it was after Minor had already stated that "Grandpa" had touched her. When viewed in isolation, the question appears leading. However, in the context of the full interview, Williamson's question was not used to elicit a statement, but rather to clarify a statement Minor made immediately before the question. Likewise, her question concerning Minor's age was also in response to a statement Minor had just made. Additionally, Minor stated earlier in the interview that she was in second grade when the incidents occurred. Further, in the video, Minor shook her head "no" directly after Williamson asked, "Six, five, and four," and before she said "or only seven." During the in camera hearing, Williamson admitted she should have asked, "Six, five, four, one of them, all of them, or none of them," but stated she narrowed the question in this way to avoid confusing Minor. Accordingly, considering the questions in the context of the interview as well as Williamson's pretrial testimony, we find evidence supports the trial court's finding that Minor's statement was not elicited by leading questions.

Second, we find evidence supports the trial court's ruling that Minor's statement was sufficient in detail. *See* § 17-23-175(B)(3) (providing the court may consider "whether the statement represents a detailed account of the alleged offense"). During the interview, when describing two instances of abuse, Minor gave details about the time of day, where she was, what she was doing at the time, whether anyone else was present, how it happened, and how it felt. We find the level of detail Minor used to describe the incidents supports the trial court's determination that the statement contained sufficient detail.

Lastly, we find evidence supports the court's ruling that the statement was coherent. *See* § 17-23-175(B)(4) (providing the court may consider "whether the statement has internal coherence"). The trial court appropriately considered Minor's age in assessing coherence. *See* § 17-23-175(A)(4) (providing that a child's out-of-court statement is admissible if "the court finds . . . that the totality of the circumstances surrounding the making of the statement provides particularized guarantees of trustworthiness"). We find Minor's assertions she "fell asleep" did not cause her interview to lack internal coherence. During trial, Minor explained she meant she

literally fell asleep because it felt "really good."  Accordingly, the trial court did not err in finding Minor's statement had internal coherence.

Because the trial court properly found the statement contained sufficient detail, had internal coherence, and was not elicited by leading questions, we find the trial court did not err in admitting the video of Minor's forensic interview.[2]  *See Pagan*, 369 S.C. at 208, 631 S.E.2d at 265 ("The admission of evidence is within the discretion of the trial court and will not be reversed absent an abuse of discretion.  An abuse of discretion occurs when the conclusions of the trial court either lack evidentiary support or are controlled by an error of law." (citations omitted)); § 17-23-175(A) (providing a child's out-of-court statement is admissible if "the court finds . . . that the totality of the circumstances surrounding the making of the statement provides particularized guarantees of trustworthiness"); § 17-23-175(B) (setting forth five factors the trial court may consider when "determining whether a statement possesses particularized guarantees of trustworthiness").

## C.

Mozeak challenges the trial court's admission of Minor's testimony, arguing Minor was incompetent to testify because she was coached by Mother.  Mozeak contends the trial court failed to meaningfully consider how this coaching affected her competency to testify.  We disagree.

"The determination of a witness's competency to testify is a question for the trial court, and the trial court's decision will not be overturned absent an abuse of discretion."  *Needs*, 333 S.C. at 143, 508 S.E.2d at 861.  "An abuse of discretion occurs when the conclusions of the trial court either lack evidentiary support or are controlled by an error of law."  *Pagan*, 369 S.C. at 208, 631 S.E.2d at 265.

"A person is disqualified to be a witness if the court determines that (1) [she] is incapable of expressing [herself] concerning the matter as to be understood by the [court] and jury . . . , or (2) [she] is incapable of understanding the duty of a witness to tell the truth."  Rule 601(b), SCRE.  "At common law, persons fourteen years of age and older are presumed competent [to testify]; proof of competency is required for children under that age.  *S.C. Dep't of Soc. Servs. v. Doe*, 292 S.C. 211, 218, 355 S.E.2d 543, 547 (Ct. App. 1987).  "The question of the competency of a child witness is to be determined by the trial [court]," which must "make an independent judicial

---

[2] Mozeak does not challenge the trial court's findings with respect to the remaining § 17-23-175 factors.

determination of competency." *Id.* at 219, 355 S.E.2d at 547-48. "In making [such] determination, the [trial court] must rely on [its] personal observation of the child's demeanor and responses to inquiry on voir dire examination." *Id.* at 219, 355 S.E.2d at 547. A child is competent to testify if the trial court is satisfied "that the child is substantially rational and responsive to the questions asked and is sufficiently aware of the moral duty to tell the truth and the probability of punishment if [she] lies." *Id.*

> If [a] child is mature enough (1) to understand questions and narrate answers, (2) to perceive facts accurately through the medium of the senses, (3) to recall them correctly, (4) to relate a true version of the facts perceived, (5) to know the difference between right and wrong, good and bad, (6) to understand it is right or good to tell the truth and wrong or bad to lie, (7) to be willing to tell the truth, and (8) to fear punishment if [she] lies, then [she] is competent to testify.

*Id.* "The party opposing the witness has the burden of proving a witness is incompetent." *Needs*, 333 S.C. at 143, 508 S.E.2d at 861. "After the trial court properly has determined a witness is competent, the resolution of the credibility of the witness is within the province of the jury." *Id.* at 144, 508 S.E.2d at 862.

After a pretrial competency hearing, the trial court determined Minor was competent to testify. During her trial testimony, Minor testified she practiced her testimony with Mother for an hour or two each night for about a week before trial. Minor stated they practiced when someone was going to ask her about what happened, where it happened, and how it happened. Mozeak argued that under Rule 601, SCRE, and the factors set forth in *Doe*, Minor was disqualified and incompetent to testify because she was coached and could no longer testify based on her own perceptions, knowledge, memory, and interpretation of events. The trial court overruled the objection, noting the issue of Minor's credibility should be explored during cross-examination and was a question for the jury to decide.

We find that, despite the evidence of coaching, Minor's testimony was not tainted to the point she was no longer competent to testify. *See Doe*, 292 S.C. at 219, 355 S.E.2d at 547. Minor never stated Mother told her what to say. Mother acknowledged she practiced with Minor and testified she asked Minor the kind of questions "any person would ask" but never told Minor what to say or how to react in response. We note Mozeak did not challenge the trial court's pretrial competency determination, nor did he request an additional hearing or opportunity to question

Minor or Mother in camera concerning the possibility of taint or coaching. *See Needs*, 333 S.C. at 143, 508 S.E.2d at 861 ("The party opposing the witness has the burden of proving a witness is incompetent."). Accordingly, we find the trial court did not err in admitting Minor's testimony. *See id.* ("The determination of a witness's competency . . . is a question for the trial court, and [its] decision will not be overturned absent an abuse of discretion."); *Pagan*, 369 S.C. at 208, 631 S.E.2d at 265 ("An abuse of discretion occurs when the conclusions of the trial court either lack evidentiary support or are controlled by an error of law."); *Needs*, 333 S.C. at 144, 508 S.E.2d at 862 ("After the trial court properly has determined a witness is competent, the resolution of the credibility of the witness is within the province of the jury.").

## IV.

Accordingly, Mozeak's convictions are

**AFFIRMED.**

**SHORT, THOMAS, and HILL JJ., concur.**