16406

COOPER CORPORATION v. JEFFCOAT

(61 S. E. (2d) 53)

*Messrs. Marshall B. Williams* and *Hydrick & Hydrick,* of Orangeburg, *for Appellants,*

*Mr. Reddick A. Bowman,* of Orangeburg, *for Respondent,*

September 7, 1950.

TAYLOR, Justice.

This appeal comes to this Court from the Court of Common Pleas for Orangeburg County where respondent sought judgment in the sum of $8,549.01, this being the amount which it is contended is due and owing on account as a

result of having sold appellants automobile tires. The appellants set forth among other things in their answer that they received the tires, made payments thereon and returned others which were defective, denied that they owe any amount on account, and contended that the tires were not as warranted under the contract, resulting in damage to the appellants.

Upon the hearing of the cause before a judge and jury, judgment was entered for respondent in the sum of $4,274-.50, as a result of which appellants now come to this Court contending that the Trial Court erred in that it admitted into evidence letters and reports of tests made on tires of respondent by persons not offered as witnesses.

The testimony discloses that appellants had purchased tires from time to time from January 14, 1948, through May 18, 1948, had made payments thereon at various intervals and that the sum total of these transactions was $18,801.55.

A pertinent portion of the testimony appears as follows:

"By Mr. Bowman:

"Q. Did your company ever attempt to have a real technical test made of your product, your tires? A. Yes, sir.

"Q. Can you name some of the people who made the tests for you? A. In Akron we had the V. F. Smithers Laboratory who test many tires every month. They have a tire testing service. We send these reports to every customer. We get monthly reports. In these laboratories—

"Mr. A. J. Hydrick, Sr.: Your Honor, we object to his telling what is in the reports.

"Mr. Bowman: Your Honor, we have a case in Ruling Case Law which cites—

"(Arguments by Counsel.)

"The Court: Have you a report that they made?

"Mr. Bowman: Your Honor, we have reports from five companies who made these tests, all distinct concerns.

"The Court: Offer them in evidence.

"Mr. Bowman: We offer them in evidence. The five reports are in evidence as Exhibits.

"By Mr. Bowman:

"Q. This is a report from Smithers? A. Yes, sir.

"Q. What did they find about your tires?

"Mr. A. J. Hydrick, Sr.: Your Honor, this testimony should have been taken by deposition.

"The Court: I overrule the objection.

"(In evidence as Exhibit "K" the five reports referred to.)

"Mr. Bowman: The Smithers testing people were all of your tires  *  *  *?

"Mr. Hydrick: Your Honor, our objection runs to all of this testimony.

"The Court: Yes, sir; the stenographer will put it down.

"The Witness: Here is the detail. The witness begins to read—

"Mr. Hydrick: Your Honor, the witness is reading from a letter.

"By Mr. Bowman:

"Q. Did that letter accompany that report? A. Yes, sir. In the same envelope.

"Mr. Hydrick, Sr.: Your Honor, we object to the introduction of the letter.

"The Court: I understand all of that. I am not going to require them to read all of that report.

"By Mr. Bowman:

"Q. Testifying from the letter—A. 'You will find attached three copies  *  *  *'

"(The witness reads from the letter.) 'Your tire shows up very favorable.' Mr. Smithers sent an affidavit with this report. The witness reads the affidavit.

"Q. Did you ask the Dupont people to make a test for you? A. Yes, sir.

"Q. Is that the original report from them? A. Yes sir, original letter and report.

"Q. What did they think of your product? A. They ran our tires under a government testing wall. One tire went two

times and the other one almost four times beyond the government requirement.

"Q. Does the Standard people have a testing laboratory, the Standard people of New Jersey? A. Yes, sir, they made tests for us.

"Q. What name is that? A. Enjay Company. That is the Standard company report. They sent us this report. That is a report. We submitted four tires. All four ran under satisfactory mileage, all of them 26,000 miles or over. Not one of the tires fell in the 26,000 miles. All tires ran full mileage.

"Q. Did the McCary Tire and Rubber Company make a test of your tires for you? A. Yes, sir. Government specification was 21,060. One tire went three more than the government requirement.

"Q. Does that concern also make tires? A. Yes, sir, in Indiana and Pennsylvania. They ran these tires through in their testing laboratories.

"Q. Did you get the City Cab company of your own city, Findlay, Ohio, to use your tires on their cabs? A. Yes, sir.

"Q. Did they make a test for you? A. Yes, sir.

"Q. What kind of facilities did that company have for testing your tires?

"Mr. Williams: Your Honor, now he is going on talking about some test by a taxicab company.

"The Witness: That is one test that was made under supervision of our own laboratory technician. Made a detailed report almost daily, inspecting these tires to observe their performance.

"Mr. Bowman: That is enough on that, we will stop with that.

"Mr. Hydrick: Your Honor, we would like to add to our motion another motion. We are now moving to strike out that evidence, also, for the reason that no time is shown as to when these tires were tested or when they were manufactured in order to be relevant they would have to show that the tires tested came from the same process or manufacture as the tires in this case did.

"The Court: I think that is getting it down too fine. Objection overruled."

"Hearsay evidence is inadmissible according to the general rule. Various reasons have been assigned for requiring the exclusion of this kind of testimony. The real basis for the exclusion, however, appears to lie in the fact that hearsay testimony is not subject to the tests which can ordinarily be applied for the ascertainment of the truth of testimony. It is said that a statement by hearsay is one made without the sanction of an oath and without the declarant being under a responsibility to answer for the crime of perjury in making a willful falsification. This objection loses some of its force when it is remembered that even a statement made under oath or in the course of a judicial proceeding between parties other than the parties to the suit is inadmissible as hearsay unless within an exception to the rule. Probably the most important objection to admitting hearsay testimony in evidence is that the declarant is not present and available for cross-examination. The exercise of the right to cross-examine the witness of the adverse party is regarded as, and is in fact, essential in the administration of justice to discover the falsity of testimony and prevent the admission of perjured testimony. This right is not available in respect of hearsay since the declarant is not present in court. Moreover, both the court and the jury are without opportunity to test the credibility of hearsay statements by observing the demeanor of the person who made them." 20 Am. Jur., Section 452, Page 400.

In *Jones v. Charleston & W. C. Ry. Company*, 144 S. C. 212, 142 S. E. 516, 517, this Court stated: "The reason for this rule of exclusion is that hearsay is not subject to the ordinary tests required by law for ascertaining its truth, the author of the statements not being subject to cross-examination in the presence of a court of justice, and not speaking under the penal sanction of an oath, there being no opportunity to investigate his character and motives, and his deportment not being subject to observation. And the

misconstruction to which such evidence is exposed, from the ignorance or inattention of the hearers, or from criminal motives, is a powerful additional objection."

The various tests referred to were made by third parties and their reports submitted to the respondent were admitted into evidence. Appellants were thereby denied the opportunity of cross-examining any of the makers of these tests relative to their methods or findings which, however, were accepted as evidence by the Trial Court. This clearly violated the rule as to hearsay evidence.

Respondent contends that, even though this evidence be denominated as hearsay, it was not prejudicial. With this we do not agree. The answer set forth among other things that the tires were defective and that appellants had been sufficiently damaged by reason of such faulty tires to offset any difference between the purchase price and that paid on account. The Trial Judge in his charge to the jury, after setting forth the contentions of the parties, stated: "The dispute then is as to the value of the tires. * * * The defendants set up that they were not worth that much, and that the tires that they did return was sufficient to pay any balance due the plaintiff." The question of the value of the tires was therefore a material issue of fact to be determined by the jury.

Such evidence being incompetent and having some probative value upon a material issue of fact in the case, it is presumed to be prejudicial. *Cable Piano Company v. Southern Ry. Co.,* 94 S. C. 143, 77 S. E. 868; *Templeton v. Charleston & W. C. Ry. Company,* 117 S. C. 44, 108 S. E. 363; *Powers v. Rawls,* 119 S. C. 134, 112 S. E. 78; *Johnson v. Broome,* 175 S. C. 385, 179 S. E. 315.

It therefore follows from the foregoing that the judgment of the Trial Court must be reversed and the case remanded for a new trial, and It Is So Ordered.

BAKER, C. J., and FISHBURNE, STUKES and OXNER, JJ., concur.